IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PAN AM REALTY, LTD., BJT | § | CV NO. 5:14-cv-629-DAE |
| PROPERTIES, INC. f/k/a B.J. | § | |
| TIDWELL INDUSTRIES, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| WELLS FARGO BANK, NATIONAL | § | |
| ASSOCIATION, HILCO | § | |
| INDUSTRIAL, LLC, AND HILCO | § | |
| MERCHANT RESOURCES, LLC, | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

ORDER DENYING PLAINTIFFS' MOTION TO DISMISS

Before the Court is a Motion to Dismiss for Lack of Subject Matter

Jurisdiction filed by Plaintiffs Pan Am Realty, Ltd. ("Pan Am") and BJT

Properties, Inc. f/k/a B.J. Tidwell Industries, Inc. ("BTI") (collectively,

"Plaintiffs"). (Dkt. # 54.)  Pursuant to Local Rule 7(h), the Court finds the matter

suitable for disposition without a hearing.  For the reasons that follow, the Court

**DENIES** Plaintiffs' Motion. (Dkt. # 54.)

BACKGROUND

Plaintiffs' case arises out of the liquidation of Cardell, a cabinet

manufacturing business.  (Dkt. # 38 ¶¶ 9, 53.)  In November 2010, BTI sold assets

1

previously used in its cabinet manufacturing business to Cardell.  (Id. at 15.)  BTI and Cardell memorialized the purchase through an Asset Purchase Agreement, which described the particular assets that were included and excluded from the purchase.  (Id. ¶ 28.)  To finance the purchase, Cardell took out a loan from Defendant Wells Fargo, which was secured by a lien on the assets.  (Id. ¶ 17.)  At the same time, Cardell became the lessee of various manufacturing facilities and commercial buildings held by Plaintiffs (the "Premises").  (Id. ¶¶ 18–19.)

Throughout the years preceding the sale, BTI and its predecessor had constructed and installed permanent improvements to the Premises, including networks of industrial electrical systems (the "Electrical Improvements"), dust collection and air quality systems (the "Environmental Improvements"), fire protection systems (the "Fire Improvements"), and permanent equipment and machinery.  (Id. ¶¶ 24–25.)  These improvements were part of the leased property and were not part of the assets sold to Cardell in 2010.  (Id. ¶ 27.)

Pursuant to the execution of the lien, Plaintiffs entered into separate Consent Agreements (the "Agreements") with Wells Fargo, which outlined what Wells Fargo would be able to do on the Premises in the event that Cardell defaulted on its loan and Wells Fargo needed to exercise its rights against the assets.  (Id. ¶¶ 36–40.)  The Agreements permitted Wells Fargo to occupy and use the Premises for a limited time after defaults, subject to certain obligations,

including payment of rent and repair of any damages, as well as those obligations owed under Texas state law.  (Id. ¶ 41.)

In late 2013, after Cardell had defaulted on its obligations, Wells Fargo took possession of and occupied the Premises in order to liquidate the collateral.  (Id. ¶ 62.)  During Wells Fargo's occupancy, Plaintiffs allege that third parties, including Defendant Hilco Industrial, LLC ("Hilco Industrial") and Defendant Hilco Merchant Resources, LLC ("Hilco Merchant") (collectively, "Hilco"), caused substantial damage to the Premises.  (Id. ¶¶ 83–88.)  Plaintiffs further allege that they held one or more insurance policies (collectively, the "Policy") from Axis, which covered the damages from the incident.  Second Amended Complaint, Pan Am v. Axis, No. 5:14-CV-1079, Dkt. # 32 ¶ 31 (W.D. Tex. May 19, 2015).  Axis has partially reimbursed Plaintiffs for the damage, although Plaintiffs allege that they have not been properly reimbursed for that damage.  Id. ¶ 34–35.

On July 11, 2014, Plaintiffs filed a complaint in this Court against Hilco and Wells Fargo (collectively, "Defendants"), alleging that during Wells Fargo's occupancy, agents, employees, and contractors of Defendants caused damage to the property by destroying, misappropriating, and removing permanent improvements, including the Electrical Improvements, Environmental Improvements, and pallet racks, which were listed as excluded assets in the Asset

Purchase Agreement, among other excluded assets.  (Dkt. # 38 ¶¶ 105–110.)

Additionally, Plaintiffs contend that, in removing the Improvements, Defendants

caused damage to Plaintiffs' real property.  (Id. ¶ 124.)  Plaintiffs allege claims of

breach of contract and promissory estoppel against Wells Fargo and claims of

negligence and negligent supervision, trespass, private nuisance, conversion,

money had and received, and claims under the Theft Liability Act against both

Wells Fargo and Hilco.  (Id. ¶¶ 130–158.)

On June 4, 2015, Plaintiffs filed the instant Motion to Dismiss for

Lack of Subject Matter Jurisdiction.  (Dkt. # 54.)  Defendants filed their Response

on June 11, 2015 (Dkt. # 56), and Plaintiffs filed their Reply on June 15, 2015

(Dkt. # 57).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may seek

dismissal of a complaint for lack of subject matter jurisdiction.  "A case is properly

dismissed for lack of subject matter jurisdiction when the court lacks the statutory

or constitutional power to adjudicate the case."  Home Builders Ass'n of Miss.,

Inc. v. City of Madison, 142 F.3d 1006, 1010 (5th Cir. 1998).  The burden of

establishing that the court has subject matter jurisdiction rests on the party

invoking it.  Crane v. Johnson, 783 F.3d 244, 251 (5th Cir. 2015).  A district court

may dismiss an action for lack of subject matter jurisdiction on any one of the

following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Id. "'[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief.'" Gilbert v. Donahoe, 751 F.3d 303, 307 (5th Cir. 2014) (quoting Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001)).

## DISCUSSION

Plaintiffs argue that the instant action must be dismissed because the Court lacks subject matter jurisdiction.  (Dkt. # 54 at 1.)  Specifically, Plaintiffs contend that Axis's status as a partial subrogee makes it a real party in interest to the litigation, its presence in the litigation is therefore required, and as such Axis's required presence in this suit defeats diversity.  (Id. ¶¶ 4–5.)  Defendants counter that even if Axis is a real party in interest, which they dispute, Axis's citizenship does not affect the Court's jurisdiction because it is not an indispensable party pursuant to Federal Rule of Civil Procedure 19(b).  (Dkt. # 56 at 2.)  It is undisputed that Axis, as an Illinois citizen, shares the same citizenship as Hilco.

## I.    Axis's Status as a Real Party in Interest

Federal Rule of Civil Procedure 17(a) requires that an action "be prosecuted in the name of the real party in interest," which is defined as the party

"holding the substantive right sought be enforced," although "not necessarily the [party that] will ultimately benefit from the recovery." In re Signal Intern., LLC, 579 F.3d 478, 487 (5th Cir. 2009) (quoting Farrell Constr. Co. v. Jefferson Parish, La., 896 F.2d 136, 140 (5th Cir. 1990)). "The purpose of this requirement 'is to assure a defendant that a judgment will be final and that res judicata will protect it from having to twice defend an action, once against an ultimate beneficiary of a right and then against the actual holder of the substantive right.'" Id. (quoting Farrell, 896 F.2d at 142).

Under both federal and Texas law, a subrogee is a real party in interest with substantive rights against a tortfeasor. United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 380 (1949); Rushing v. Int'l Aviation Underwriters, Inc., 604 S.W.2d 239, 541 (Tex. Ct. Civ. App. 1980). When an insurer–subrogee pays the entire loss, it is the real party in interest with the right to bring suit; when an insurer–subrogee pays only part of the loss, "both the insured and insurer remain real parties in interest" with substantive rights against the tortfeasor. Aetna, 338 U.S. at 381.

Defendants argue that Axis does not qualify as a real party in interest because it is only partially subrogated to Plaintiffs and it is seeking to recover damages for those losses in a separate suit in state court. (Dkt. # 56 at 4; id., Ex. C at 10.) Plaintiffs counter that Axis is contractually entitled to the initial $3.7

6

million of any judgment that Plaintiffs ultimately receive for property damage.
(Dkt. # 57 at 3.)  Plaintiffs concede that the argument "is predicated on the current
status of all the pending litigation," noting that "[i]f Axis were to obtain a recovery
in its subrogation action, its subrogation rights would obviously be modified."  (Id.
at 3 & 3 n.3.)

Plaintiffs and Axis held a contractual agreement with a subrogation
clause subrogating Plaintiffs' rights to recovery to Axis "[i]n the event of any
payment under [the] Policy."  (Dkt. # 54-1, Ex. A at 38.)  Axis has paid Plaintiffs
$3.7 million dollars under the Policy for the losses sustained as a result of
Defendants' actions—an amount to which Axis now has the substantive right to
recovery.  However, Plaintiffs seek damages beyond the $3.7 million from
Defendants.  (Dkt. # 56, Ex. B at 11:22–12:6.)  Accordingly, Axis is a partial
subrogee, and therefore shares substantive rights as a real party in interest together
with Plaintiffs.

Nonetheless, Axis's status as a real party in interest has no automatic
effect on the instant litigation.  Rule 17 is not a joinder statute; its purpose is to
permit a subrogee to enforce rights in his own name, not to govern joinder of
parties in cases of partial subrogation.  See Va. Elec. & Power Co. v.
Westinghouse Elec. Corp., 485 F.2d 78, 84 (4th Cir. 1973).  Although Rule 17
would certainly permit the joinder of Axis to the ligation, it is no bar to the

litigation, especially where joinder would destroy diversity.  Id.; see Corfield v. Dall. Glen Hills LP, 355 F.3d 853, 864–65 (5th Cir. 2003) (holding that a plaintiff may not use the citizenship of a nondiverse person with an interest in the lawsuit but who was not party to the lawsuit to destroy diversity jurisdiction and dismiss the case); Johnson v. Qualawash Holdings, L.L.C., 990 F. Supp. 2d 629, 635 (W.D. La. 2014) ("ISCP's interpretation of Rule 17 . . . would seem to dictate that any time a non-party has an interest in ongoing litigation that entity is somehow automatically made a party to said litigation by operation of law.  With this, the court cannot agree[.]"); see also Lincoln Prop. Co. v. Roche, 546 U.S. 81, 93 (2005) (holding that if a suit already contains a named party with a real interest in the case, the district court's jurisdiction will not be divested by the existence of additional parties with interests who have not been joined).  Accordingly, Axis's status as a real party in interest has no bearing on the Court's jurisdiction under Rule 17.

II.     Joinder Under Rule 19

        Federal Rule of Civil Procedure 19 is the only mandatory joinder rule, and provides for mandatory joinder only if "joinder will not deprive the court of subject-matter jurisdiction."  Fed. R. Civ. P. 19(a)(1).  When joinder would destroy diversity jurisdiction, the Court must look to the factors set out in Rule 19(b) to determine whether, "in equity and good conscience," the action should proceed

between the parties or should be dismissed because the absent party is

indispensable.  Id. at 19(b); see also Hood ex. rel. Miss. v. City of Memphis, Tenn.,

570 F.3d 625, 633 (5th Cir. 2009).  Under Rule 19(b), a court may consider:

> (1) the extent to which a judgment rendered in the person's absence
> might prejudice that person or the existing parties; (2) the extent to
> which any prejudice could be lessened or avoided by: (A) protective
> provisions in the judgment; (B) shaping the relief; or (C) other
> measures; (3) whether a judgment rendered in the person's absence
> would be adequate; and (4) whether the plaintiff would have an
> adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

        In light of the 19(b) factors, Axis is not indispensable to the instant

action.  Regardless of Axis's presence or absence from the instant litigation,

Defendants will not be doubly liable for the $3.7 million that Axis has already paid

to Plaintiffs; Axis has an independent substantive right in those damages separate

from that of Plaintiffs, and Defendants will be liable to each party only for their

separate liabilities.  See Aetna, 338 U.S. at 379.  Nor will Defendants be subject to

duplicitous litigation on the liability issue: once the Court issues a decision on

liability, the parties will be collaterally estopped from relitigating the issue.  See

McAuslin v. Grinnell Corp., No. CIV.A. 97-775, 2000 WL 1059850, at *6 (E.D.

La. Aug. 1, 2000) (citing Terrell v. DeConna, 877 F.2d 1267, 1270 (5th Cir.

1989)).  Although judicial efficiency would certainly be served by avoiding

litigation in separate suits, there is no prejudice to either party by continuing the

case without Axis.

Indeed, various cases grappling with similar circumstances have concluded that a partial subrogee is not indispensable to the litigation.  E.g.,  Plains Growers, Inc. by Florists' Mut. Ins. Co. v. Ickes-Braun Glasshouses, Inc., 474 F.2d 250, 252 (5th Cir. 1973) (holding that there were no grounds to claim the plaintiff's insurance company was indispensable to the suit when the insurance company "never saw itself as an indispensable party, is not a party to the lawsuit, has not sought to become one, and plaintiff has failed to take any steps to make it a party of record in the proceedings"); Allstate Ins. Co. v. Reroof Am., No. CIV.A. 06-5202, 2007 WL 496620, at *2 (E.D. La. Feb. 8, 2007) (denying the plaintiff's motion to dismiss because the nondiverse real party in interest was not indispensable); McAuslin, 2000 WL 1059850, at *7 (finding that partial subrogees may be dispensable parties).

Accordingly, Axis does not qualify as an indispensable party, and Axis's joinder to the suit is not required for resolution of the instant litigation.  The Court therefore **DENIES** Plaintiffs Motion to Dismiss.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion to Dismiss (Dkt. # 54).

10

**IT IS SO ORDERED**.

**DATED**: San Antonio, Texas, July 28, 2015.


David Alan Ezra
Senior United States Distict Judge